IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| STUART SIMONSEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TSUNAMI CAPITAL, LLC, an Illinois limited liability company,<br><br>Defendant. | CV 08-119-BLG-RFC-CSO<br><br>FINDINGS and RECOMMENDATION of UNITED STATES MAGISTRATE JUDGE |

Stuart Simonsen ("Simonsen") filed a Complaint for Declaratory Relief in Montana state district court ("state court"). *Court's Doc. No. 1, Ex. A ("Complaint")*. Tsunami Capital, LLC ("Tsunami") removed the action to this Court, asserting diversity jurisdiction. *Court's Doc. No. 1*.

Now pending are Simonsen's motion for remand to state court (*Court's Doc. No. 10*), and Tsunami's motion to change venue to the Northern District of Illinois. *Court's Doc. No. 11*. For reasons stated below, the Court recommends[1] granting Simonsen's motion for remand and does not reach Tsunami's motion to change

---

[1] By order dated December 29, 2008, Chief Judge Cebull referred this case to the undersigned for pretrial purposes pursuant to 28 U.S.C. § 636(b), including submission of proposed findings and recommendations. *Court's Doc. No. 21*. There is a split of authority on whether a magistrate judge can rule on a motion to remand under 28 U.S.C. 636(b)(1)(A). *Compare* Vogul v. U.S. Office Prods. Co., 258 F.3d 509, 515 (6th Cir. 2001)(holding that remand orders are "dispositive" and can only be entered by a district judge) *and* Franklin v. City of Homewood, 2007 WL 1804411 (N.D. Ala. 2007)(holding that a motion to remand is a non-dispositive issue and within the authority of a magistrate judge). Because the Ninth Circuit has not resolved this issue, the Court files this findings and recommendation rather than a remand order.

venue.

## I. BACKGROUND

Simonsen's Complaint alleges the following facts: Simonsen is a resident of Billings, Montana. *Complaint, ¶ 2.* He is the creator, owner and licensor of mathematical equations used for trading securities futures. He develops software using these equations. *Id., ¶ 3.*

Tsunami was an Illinois limited liability company that was involuntarily dissolved on September 14, 2007. *Id., ¶ 4.* Anthony A. Demasi was Tsunami's managing member. *Id., ¶ 6.*

In early 2005, Demasi and Simonsen met telephonically and at Simonsen's home in Billings. *Id., ¶¶ 19-23.* Simonsen and Tsunami subsequently executed two Single-End User Subscription Licenses, the first on March 9, 2005, and a superceding license on February 8, 2006 ("licensing agreements"). The licensing agreements made Tsunami a licensee of software identified as "Trading Logic", which was created by Simonsen using his mathematical equations and software. *Id., ¶ 5.* Both licensing agreements required monthly payments of $50,000 from Tsunami to Simonsen. *Id., ¶¶ 25, 32.* Simonsen terminated the 2006 licensing agreement in writing on May 29, 2007. *Id., ¶ 36.*

On November 9, 2006, Simonsen entered a Trader Agreement with a different entity, TradeLink ("Trader Agreement"). Under the Trader Agreement, Simonsen agreed to license software to TradeLink and to conduct trading and investing for TradeLink using that software. *Id., ¶ 40.* Neither Demasi nor Tsunami are parties to the Trader Agreement. *Id., ¶ 43.*

On April 25, 2007, the Commodity Futures Trading Commission ("CFTC") brought action against Tsunami and Demasi in the United States District Court for

the Northern District of Illinois ("CFTC action").  *Id., ¶¶ 7, 46.*  On May 4, 2007, the court in the CFTC action issued a consent order for a preliminary injunction against Tsunami and Demasi that, *inter alia*, froze all their funds, securities, assets, and other property.  *Id., ¶¶ 51-52.  See also Court's Docket No. 22 (Cause No. 07 C 2256, No. Dist. Ill.).*  On May 25, 2007, Tsunami filed in the CFTC action an accounting of its assets.  These assets included (1) an "[o]wnership interest in four trading systems and future development," and (2) "Licensing Fees and Payments pursuant to an agreement between Tsunami Capitol, LLC and Simonsen."  *Id., ¶¶ 53-54.*

On June 28, 2007, Simonsen was deposed in the CFTC action.  *Id., ¶¶ 56-57.*  At the deposition, the CFTC showed him two documents: (1) a "Licensing Agreement" dated March 9, 2006, entitling Demasi to fees and profits generated by Simonsen under the Trader Agreement with TradeLink, and (2) a "Binding Letter of Intent" dated December 26, 2006.  *Id., ¶¶ 1, 57-61.*  Both documents purportedly bore Simonsen's signature, but Simonsen alleges these signatures are forgeries and testified that he signed neither document.  *Id., ¶¶ 59-63.*  When Demasi was asked in deposition about the March 9 document and December 26 document, he invoked his Fifth Amendment privilege against self-incrimination.  *Id., ¶¶ 66-69.*

Simonsen represents that he has been only marginally involved in the CFTC action.  Three attorneys appeared on his behalf on a limited basis, when the CFTC sought to affect his funds and intellectual property.  *Court's Doc. No. 19 at 4-5.*  Simonsen was not a party in that action and neither Tsunami nor Demasi has initiated any action or asserted any claim against Simonsen in the CFTC action or otherwise.  *Id.; Complaint at ¶ 55.*  Judgment was entered in the CFTC action on

October 3, 2008. The Northern District of Illinois continues to consider post-judgment issues. *See Docket Nos. 359-415, Cause No. 07 cv 2256, No. Dist. Ill.*

## II.   PARTIES' ARGUMENTS

### A.   Simonsen's Motion for Remand

Simonsen moves for remand to the Montana Thirteenth Judicial District Court. *Pl. Simonsen's Mot. for Remand (Court's Doc. No. 10) at 1.* Simonsen argues, first, that the relevant business dealings were substantially negotiated in Billings, and that the technology and intellectual property at issue were developed in and have always been located in Montana. *Id. at 2.*

Simonsen states that when, in the CFTC action, Tsunami asserted as an asset a right to the technology that is the subject of the Trader Agreement with TradeLink, a portion of the money Simonsen earned under the Trader Agreement was frozen. *Id. at 2.*

Federal district courts have discretion to determine whether to exercise jurisdiction over a Declaratory Judgement Act action, even when the action otherwise satisfies the requirements for subject matter jurisdiction. *Id. at 3-4.* Simonsen argues that the three factors outlined in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942), weigh against exercising discretionary jurisdiction. Simonsen argues that his complaint is based only on state contract and tort law – there are no federal questions. *Id. at 3.*

Tsunami responds that the CFTC has called the instant case unconscionable and a waste of judicial resources. *Response Br. in Opposition to Pl's Mot. for Remand (Court's Doc. No. 13) at 2.* As the voluminous papers from the CFTC action show, the Illinois court is already familiar with this matter and in the best position to make a decision. *Id. at 1-2.* Tsunami argues the Court should address

transfer of venue before considering the remand issue. *Id. at 2*.

Tsunami also argues that the Brillhart factors weigh in favor of retaining this case in federal court. *Id. at 3*. First, the state law issues are not complicated, and Simonsen has not shown that any undecided state law matters must be determined. *Id.* Second, the best way to avoid duplicative litigation is for the Court to retain the case, and then transfer it to the Illinois court. Even though Simonsen argues the CFTC action is not parallel to this one because he is not a party to it, in actuality Simonsen has appeared many times in the CFTC action attempting to convince the Illinois court not to allow Tsunami to list as assets the contract and proceeds which are the subject of this case. *Id. at 4*. Third, Tsunami argues that the Court will avoid Simonsen's attempt to forum shop by retaining the matter and then transferring it to the Illinois court. *Id. at 4-5*.

Simonsen replies that the Court should first rule on the motion to remand because jurisdiction must be determined initially. *Simonsen's Reply (Court's Doc. No. 20) at 2*. Simonsen also argues that this case involves complex state law issues, that Simonsen's involvement in the CFTC action was limited, that the Illinois court noted that the subject matter of this case was not properly before it, and that Tsunami seeks to forum shop and bog this litigation down in the CFTC action. *Id. at 2-5*.

### B. Tsunami's Motion to Change Venue

Tsunami argues that this matter should be transferred to the Illinois court, where the same dispute is at issue in the CFTC action. *Br. in Supp. of Mot. to Change Venue (Court's Doc. No. 12) at 2*. Tsunami argues that in the voluminous CFTC action, Tsunami's ownership rights in any contract with Simonsen are already at issue, and that Tsunami's assets may be subject to a

receivership at the decision of the Illinois court.  *Id. at 3.*  Counsel for Simonsen have made several voluntary appearances in the CFTC action.  *Id. at 3-5.*

Tsunami argues that, because the issue is already before the Illinois court, the matter should be transferred under 28 U.S.C. § 1404(a).  *Id. at 5-6.*  Also, if this matter were transferred to the Illinois court, a potential problem with Simonsen's complaint and Montana privilege law will not develop.  *Id. at 8-10.*

Simonsen responds by urging the Court to rule first on the motion to remand.  *Simonsen's Response (Court's Doc. No. 19) at 3.*  Responding directly to Tsunami's arguments, Simonsen states that he is not a party to the CFTC action, that the forgery issues here are distinct from the issues in that action, and that he has appeared infrequently and unwillingly in that action.  *Id. at 3-5.*  Further, there is no receivership with respect to Simonsen, Tsunami, and Demasi.  The Illinois court has decided that Tsunami's assets are not subject to a receivership.  *Id. at 5-6.*  No one has ever filed a claim to adjudicate ownership rights to Simonsen's intellectual property, either against Simonsen in the CFTC action or in any other action.  *Id. at 6-7.*  Finally, Simonsen argues that, weighing the factors used to determine venue, Tsunami's motion should be denied.  *Id. at 7-11.*

## III.   DISCUSSION

The threshold question is which motion to address first.  As Simonsen argues, generally a court must first address jurisdiction.  As Tsunami notes, however, the cases Simonsen cites involve subject matter jurisdiction.  See Hernandez v. Campbell, 204 F.3d 861, 865-66 (9th Cir. 2000) (district court erred by failing to determine if subject matter jurisdiction existed before transferring case); Toumajian v. Frailey, 15 F.3d 648, 652 (9th Cir. 1998) (district court erred by failing to consider question of subject matter jurisdiction); Integrated Health

Services of Cliff Manor, Inc. v. THCI Co., LLC, 417 F.3d 953, 957 (8th Cir. 2005) (court without subject matter jurisdiction cannot transfer case under 28 U.S.C. § 1404(a)); Atlantic Ship Rigging Co. v. McClellan, 288 F.2d 589, 590-91 (3d Cir. 1961) (court lacking subject matter jurisdiction lacks power to transfer). Here, the parties agree that the Court has subject matter jurisdiction. The question is whether, given subject matter jurisdiction, the Court should exercise its discretion to hear the case under the Declaratory Judgment Act ("DJA").

Courts confronting multiple issues generally analyze discretionary jurisdiction before reaching non-jurisdictional questions such as venue. See, e.g., American Cas. Co. v. Krieger, 181 F.3d 1113, 1118-24 (9th Cir. 1999) (concluding district court properly addressed discretionary jurisdiction before discussing other legal issues). Regarding the motions here, the only published opinion the Court located discussing both discretionary jurisdiction under the DJA and transfer of venue under 28 U.S.C. § 1404(a) first determines subject matter jurisdiction, then discretionary jurisdiction, and finally, venue. McKee Foods Kingman v. Kellogg Co., 474 F.Supp.2d 934, 937-42 (E.D. Tenn. 2006). The Court concludes that it should decide whether to exercise its discretionary authority before considering the motion to change venue.

If, as here, the suit passes "constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate." Gov't Empl. Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). The DJA "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Id. (citing Public Affairs Associates v. Rickover, 369 U.S. 111, 112 (1962)).

The Court is guided in this determination by the Supreme Court's

announcements in Brillhart.  These non-exclusive factors are: "(1) the district court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and (3) it should avoid duplicative litigation."  Id. at 1225.  Essentially, the district court "must balance concerns of judicial administration, comity, and fairness to the litigants."  Chamberlain v. Allstate, Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991).

### A.    Needless Determination of State Law Issues

The first factor weighs against retaining this case.  The Ninth Circuit has observed that, in a declaratory judgment action where "the sole basis for jurisdiction is diversity of citizenship, the federal interest is at its nadir.  Thus, the Brillhart policy of avoiding unnecessary declarations of state law is especially strong[.]"  Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991) *overruled on other grounds by* Dizol, 133 F.3d at 1227.

In Kolstad, this court declined jurisdiction under the DJA because, among other things, the case presented a novel issue of state law – the availability in Montana of underinsured motorist coverage for emotional damages.  Kolstad, 12 F.Supp.2d at 1105.  See also Keown v. Tudor Ins. Co., 2008 WL 2230722, *5 (court should decline jurisdiction to avoid needlessly determining unanswered state law question).

In Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 804 (9th Cir. 2002), the Ninth Circuit affirmed the district court's order remanding a case under similar circumstances.  The district court held that state court was a preferable forum because the issues concerned only state law.  Id.  Though the Ninth Circuit found there was "no great need for state court resolution of an open question of state law," it found that the district court did not abuse its discretion in remanding

the case.  Id.

Here, as the complaint is pleaded, it appears that Montana law will govern.  In the two earlier agreements between the parties, which apparently both parties admit were properly executed, the choice of law provisions select Montana law.  *Court's Doc. No. 10-2 at 15, 19*.  There is at least an argument that a novel question of Montana law, the application of Montana Rule of Evidence 505 to a civil litigant's invocation of the 5th Amendment privilege against self-incrimination, will arise.  Thus, the Court concludes the first Brillhart factor weighs in favor of remand to Montana state court.

### B.    Discourage Forum Shopping

This factor favors neither party.  Simonsen has filed the only lawsuit between these parties regarding the parties' alleged agreements.  Tsunami's removal of the lawsuit based on diversity jurisdiction does not constitute forum shopping.[2]  See Keown, 2008 WL 2230722, *10 (citing First State Ins. Co. v. Callan, 113 F.3d 161, 162 (9th Cir. 1997)).  Each party understandably prefers to litigate this matter close to home and place of business, but no explicit suggestion is made by either party that an expectation of a different or more favorable result drives the parties' forum preferences.  See Huth, 298 F.3d at 804 (preference for state versus federal resolution not forum shopping).  Simonsen indicates that his preference for a Montana court is not forum shopping, but a desire to adjudicate his

---

[2]The Court notes, however, that the jurisdictional allegations in the Notice of Removal are defective.  Only the residence of Plaintiff, not the citizenship, is alleged.  *See* Kanter v. Warner-Lambert Co., 265 F.3d 853 (9th Cir. 2001) (holding a notice of removal defective for failure to allege citizenship).  Only the "headquarters" of Tsunami is alleged, not the place of incorporation and  principal place of business.  *Id; see* Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001)(noting that, under 28 U.S.C. § 1332(c)(1), corporations are citizens of both the state where they are incorporated and the state where they have their principal place of business).  Because the court is recommending remand, however, no leave to amend need be granted.

claims separate from the "quagmire created in the CFTC Action by hundreds of pleadings, orders, notices, etc. unrelated to Simonsen...." *Plft.'s Reply Br., Docket No. 20, at 5.*

### C.    Avoid Duplicative Litigation

Likewise, this factor favors neither party.  There is no duplicative state litigation to avoid.  Huth, 298 F.3d at 803-4.  This case does not appear to be duplicative of the federal CFTC action.  Simonsen is not a party to that action and the Illinois court has noted concerns that the Simonsen issues are not properly before that court for adjudication. *Court's Doc. No. 20-2 at 2.*  There is no contention that the CFTC action involves the same dispute between the same parties.  Further, judgment has been entered in the CFTC action and the docket in that action indicates that the case has been terminated. *Court's Doc. No. 17-2 at 3; Civil Docket for case #:1:07-cv-02256, No. Dist. Ill.*  See Krieger, 181 F.3d at 1119 (no duplicative action where state court case concluded without deciding the issue before the federal court in the declaratory relief action).

Although the Illinois court has addressed related issues, and thus there may be some saving of judicial resources if the case were transferred there, that action involved distinct issues.  In the Complaint in this action, Simonsen requests a declaration that the March 9th and December 26th documents are fraudulent and "create no obligations or rights between Simonsen and Tsunami." *Complaint at ¶¶ 80-83.*  The CFTC complaint against Demasi and Tsunami in the Illinois action is a "Complaint For Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act." *See Docket No. 1, Cause No. 07-cv-2256, No. Dist. Ill. at 1.*  Furthermore, Simonsen is contesting before the Illinois Court the legality of the order freezing the portion of his earnings from the

TradeLink contracts. *See Pltf's Mot. to Remand, Docket No. 10, at 3 n. 1.*

On balance, the Brillhart factors weigh in favor of remanding this case to Montana state court. Also, the Court notes that there are no non-discretionary claims warranting retention of the case. See Kolstad v. Trinity Universal Ins. Co. of KS, 12 F.Supp.2d 1101, 1103 (D.Mont. 1998).

Because the Court concludes that the case should not be retained, it will not reach the question of Tsunami's motion to transfer venue from the federal court in Montana to the federal court in Illinois.

## IV. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Simonsen's Motion to Remand (*Court's Doc. No. 10*) be GRANTED and this case be remanded to Montana state court.

DATED this 22nd day of January, 2009.

*/s/ Carolyn S. Ostby*
Carolyn S. Ostby
United States Magistrate Judge